Darren M. Richie, Esq. [SBN 316116]
*darren@dre.law*
Antonio Castillo, Esq. [SBN 276891]
*antonio@dre.law*
Boshra G. Khoder, Esq. [SBN 337384]
*boshra@dre.law*
**DRE, A.P.C.**
222 N. Canon Dr. Suite 201
Beverly Hills, CA 90210
Telephone.: 213.265.7888| Facsimile: 844.314.1380

Attorneys for Plaintiff MARK IBRAHIM

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK IBRAHIM, An Individual<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE; MERRICK GARLAND, Attorney General of the United States; DRUG ENFORCEMENT ADMINISTRATION; ANNE MILGRAM, Administrator of the Drug Enforcement Administration; WILLIAM D. BODNER, Special Agent in Charge of the Drug Enforcement Administration, Los Angeles Division; DOES 1- 50, INCLUSIVE<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **WRONGFUL TERMINATION**<br>2. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br>3. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br>4. **CONSTITUTIONAL VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS**<br>5. **VIOLATION OF THE EQUAL PROTECTION CLAUSE**<br><br><u>UNLIMITED CIVIL ACTION</u> |

<u>**DEMAND FOR JURY TRIAL**</u>

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TO THE COURT AND ATTORNEYS OF RECORD:

COMES NOW Plaintiff MARK IBRAHIM, who hereby complains and alleges as follows:

## **PARTIES**

1.     Defendants are U.S. DEPARTMENT OF JUSTICE; MERRICK GARLAND, Attorney General of the United States; DRUG ENFORCEMENT ADMINISTRATION; ANNE MILGRAM, Administrator of the Drug Enforcement Administration; WILLIAM D. BODNER, Special Agent in Charge of the Drug Enforcement Administration- Los Angeles Division; DOES 1- 50, Inclusive (all hereinafter referred to collectively as "Defendants").

2.     Plaintiff, Mark Ibrahim (hereinafter referred to as "Plaintiff" or "Mr. Ibrahim"), is an individual and is now, and at all times relevant herein was a resident of the state of California.

3.     Defendant Merrick Garland is the Attorney General of the United States, and the head of the Department of Justice ("DOJ"), sued in his official capacity. Attorney General Holder has supervisory authority over all United States Attorney's Offices and their personnel, including the Drug Enforcement Administration ("DEA") and its personnel. As the head of the DOJ, Attorney General Holder is responsible for the actions taken in excess of the government's authority granted by the United States Constitution.

4.     Defendant Anne Milgram is Administrator of the DEA of the United States, sued here in her official capacity as Administrator of the DEA of the United States. Defendant has supervisory authority over the DEA, and supervises all personnel of the DEA. Anne Milgram is responsible for the actions taken in excess of the government's authority granted by the role of Administrator of the DEA.

5.      Plaintiff sues DOES 1 through 50, Inclusive, herein under fictitious names as plaintiff is unaware of their true names and capacities.  When Plaintiff ascertains the DOE defendants' true names and capacities, Plaintiff will amend this complaint by inserting their true names and capacities.  Plaintiff is informed and believes, and on the basis of that information and belief alleges that each Defendant named herein as a DOE acted with the other Defendants and is responsible for the damages to Plaintiff alleged herein.  Each reference in this complaint to Defendant, or to any of them, also refers to all Defendants sued under fictitious names.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

6.      Plaintiff is also informed and believes, and on the basis of that information and belief alleges that each of the Defendants sued herein are the agents, servants, employees, licensees, guarantees, invitees or assignees of each other, and in doing the things herein alleged acted within the course and scope of such agency, employment guaranty, assignment, license, invitation and/or relationship and with the full knowledge and consent of the other.

7.      At all relevant times mentioned herein, Defendants aided and abetted the acts and/or omissions of the other Defendants in proximately causing Plaintiff's damages alleged herein.

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

9.      Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the events giving rise to this action occurred in this District.

10.      Mr. Ibrahim has been adversely affected and aggrieved by federal agency action and is entitled to monetary relief arising from said actions, the public manner of which has only further exacerbated Mr. Ibrahim's damages, in violation of federal law and contrary to the public interest.

11.      The amount in controversy in this matter exceeds the sum of $25,000, exclusive of interest and costs.

12.      As more fully alleged herein, the interests of Plaintiff have and are continuing to be directly and significantly harmed by Defendants' illegal action. The relief requested will fully redress those injuries.

## FACTUAL ALLEGATIONS

13.      Mr. Ibrahim is a United States Army Veteran with a pluperfect past and top security clearance since the age of 22.

14.      Mr. Ibrahim was appointed to the Excepted Service in accordance with the DEA's Schedule B authority on September 29, 2019.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

15.     On March 30, 2020, Mr. Ibrahim was relocated from the Washington D.C. DEA Division to the Los Angeles Division, Orange County District Office ("OCDO") and participated in a Task Force Group 16-week Field Training Agent ("FTA") Program.

16.     After completion of the first FTA Program, Mr. Ibrahim received an additional 10 weeks of training, which ended on September 19, 2020. During this additional training, Mr. Ibrahim demonstrated positive progress. Biweekly reports were provided up until September 26, 2020.

17.     On November 18, 2020, Group Supervisor ("GS") of the FTA Program Eastman, FTA Miles, and Assistant Special Agent in Charge ("ASAC") Steffick met with Mr. Ibrahim to discuss what Mr. Ibrahim could further improve upon and notified Mr. Ibrahim that he would be allotted more time for learning and more time for FTA Miles to work with him in order to make him a successful agent.

18.     On December 2, 2020, Mr. Ibrahim notified FTA Miles, GS Eastman, and ASAC Steffick of his intent to return to Washington D.C. to care for his ailing mother. Mr. Ibrahim inquired about the best way to accomplish this and was recommended to claim hardship.

19.     On December 3, 2020, as a result of his need to care for his ailing mother, Mr. Ibrahim decided to notify his chain of command of his intent to resign, which would be effective on January 29, 2021.

20.     However, on January 25, 2021, prior to date where resignation would be effective, Mr. Ibrahim rescinded his resignation and confirmed it through an email. Rather than resignation, Mr. Ibrahim opted for leave in order to care for his ailing mother.

21.     From about December 2020 through early January 2021, Mr. Ibrahim was provided leave to return home and take care of his ailing mother. Leave was to end and Mr. Ibrahim was to return to his post at the OCDO on January 7, 2021.

22.     On January 5, while still in Washington D.C., Mr. Ibrahim decided to attend the January 6, 2021 Donald Trump rally alongside his Federal Bureau of Investigations friend ("FBI Friend").

23.     On January 6, Mr. Ibrahim exercised his Constitutional right to peacefully gather and attend the ceremony at the United States Mall in front of the Capitol Building, where the inauguration took place. At no point did Mr. Ibrahim tear down any barricades or perform any unlawful act. Following this January 6 rally, news leaked regarding Mr. Ibrahim's attendance of the ceremony.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

24.     Upon Mr. Ibrahim's return from leave after January 7, Mr. Ibrahim was suddenly called into the office, revoked of his badge and gun, suspended for a total of two months, and then ultimately terminated on March 1, 2021 and revoked of his security clearance, in complete contrast to the November 18, 2020 assurances provided by GS Eastman, FTA Miles, and ASAC Steffick to Mr. Ibrahim regarding the plan for further training so he can become a successful agent.

25.     In the termination letter dated March 1, 2021, the Special Agent in Charge ("SAC") of the DEA, Los Angeles Division, William D. Bodner provided all information that was considered in deciding to terminate Mr. Ibrahim. In this information, SAC William D. Bodner listed the dates of each occurrence that ultimately led to Plaintiff's termination. However, all the provided reasons were merely the aforementioned biweekly assessments that ended on September 26, 2020, approximately six weeks prior to the assurances that were provided to Mr. Ibrahim regarding his position as mentioned in Paragraph 24 of this Complaint.

26.     Mr. Ibrahim's sudden termination and revocation of his security clearance, in complete contrast to assurances given as described in Paragraph 17 of this Complaint, resulted in Mr. Ibrahim suffering substantial damages. These substantial damages have only been exacerbated as a result of the DEA's leaking Mr. Ibrahim's lawful attendance of the January 6 rally to the press. This has further caused Mr. Ibrahim to be essentially blacklisted due to the false and defamatory news that has been broadcast about his attendance of the January 6 rally.

27.     Mr. Ibrahim has had his Constitutional, substantive due process rights violated as a result of Defendants' actions, which have ultimately caused Mr. Ibrahim to suffer substantial damages including, but not limited to lost past and future income, lost government benefits, and lost career opportunities, as well as severe emotional distress arising from his notoriety that was created and perpetuated by false and defamatory leaks to the media by the Defendants. It is important to note that Mr. Ibrahim's last name is commonly associated with that of a Muslim background.

28.     The DEA alleges that Mr. Ibrahim's employment status was probationary. However, this allegation is, in all likelihood, incorrect. Probationary status for positions similar to Mr. Ibrahim's is normally two years. However, due to Mr. Ibrahim's status as an Army Veteran, the probationary period

PLAINTIFF'S COMPLAINT FOR DAMAGES

reduces to only one year. Therefore, Mr. Ibrahim would no longer have been a probationary employee after September 29, 2020. (5 U.S.C. Government Organization and Employees §7511).

29.     For Mr. Ibrahim, all of these wrongful acts by Defendants are irreversible and have brought an end to his career-life and have dashed his hopes and dreams of continuing in governmental work as his family lineage always has.

30.     Mr. Ibrahim has exhausted all administrative remedies and there are no further administrative procedures provided by state or local law.

## FIRST CAUSE OF ACTION

### WRONGFUL TERMINATION

### (Against All Defendants)

31.     Plaintiff incorporates all allegations of this complaint and re-allege them as though they were fully set forth herein.

32.     Mr. Ibrahim was employed by the DEA as Excepted Service in accordance with the DEA's Schedule B authority on September 29, 2019.

33.     Mr. Ibrahim's employment set forth regular employee guidelines including disciplinary measures should there be unsatisfactory performance by said employee as well as the standards being in accordance with all applicable laws.

34.     Plaintiff would remain employed for so long as he performed his job in a satisfactory manner, and demotion or discharge could only be for good cause proven and then would be carried out only in accordance with the stated written policies of the DEA.

35.     Defendant DEA, and the other defendants unilaterally and without notice or opportunity to be heard, terminated Mr. Ibrahim's position at the DEA and revoked his security clearance on March 1, 2021, for clearly pretextual reasons that had already been resolved on November 18, 2020, where Mr. Ibrahim was provided assurances by GS Eastman, FTA Miles, and ASAC Steffick regarding the plan for further training so he can improve his skills to become a successful agent.

36.     Defendant DEA, and the other defendants via their compliance therewith, justified the termination of Mr. Ibrahim's position by wrongfully utilizing the biweekly assessments that had already been communicated to Mr. Ibrahim and resolved as an excuse to terminate Mr. Ibrahim. These

PLAINTIFF'S COMPLAINT FOR DAMAGES

pretextual reasons were to cover up the retaliatory intent to punish Plaintiff for his political views and to hide the lack of good cause to terminate Mr. Ibrahim for simply exercising his Constitutional right to assemble for the rally on January 6, 2021.

37.    Defendants have refused and continue to refuse to allow Mr. Ibrahim the benefits of his now-terminated DEA position.

38.    As a direct, foreseeable, and proximate result of Defendants' wrongful and pretextual acts, Mr. Ibrahim has suffered and continues to suffer substantial losses including, but not limited to lost past and future income, lost government benefits, and lost career opportunities.

39.    As a further direct and proximate result of Defendants' unlawful conduct arising from the media leaks and subsequent false and defamatory news reports, Plaintiff has suffered extreme anguish, emotional distress, tension, and anxiety, the extent of which is not fully known at this time, and the amount of damages caused by the Defendants' conduct is not yet fully ascertained, but the value will be proven at time of trial. Plaintiff claims this amount together with prejudgment interest pursuant to Civil Code §3287 and pursuant to any other provision of law providing for prejudgment interest.

## SECOND CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### (Against All Defendants)

40.    Plaintiff incorporates all allegations of this complaint and re-allege them as though they were fully set forth herein.

41.    Government workers are not at-will employees. Employees of federal and state governments cannot be fired without cause.

42.    Wrongful termination in violation of public policy typically occurs when an employer fires an employee for refusing to break the law, performing a legal obligation, exercising a legal right or privilege, or reporting a potential violation of an important law.

43.    The DEA, and the other defendants, wrongfully terminated Mr. Ibrahim from his position at the DEA, in violation of public policy, because said termination was a result of Mr. Ibrahim exercising his legal and Constitutional right to assemble on January 6, 2021 rally.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

44.     As a direct, foreseeable, and proximate result of Defendants' wrongful termination of Mr. Ibrahim's position, against public policy, Mr. Ibrahim has suffered and continues to suffer substantial losses including, but not limited to lost past and future income, lost government benefits, and lost career opportunities.

45.     As a further direct and proximate result of Defendants' unlawful conduct arising from the media leaks and subsequent false and defamatory news reports, Plaintiff has suffered extreme anguish, emotional distress, tension, and anxiety, the extent of which is not fully known at this time, and the amount of damages caused by the Defendants' conduct is not yet fully ascertained, but the value will be proven at time of trial.

## THIRD CAUSE OF ACTION

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against All Defendants)

46.     Plaintiff incorporates all allegations of this complaint and re-allege them as though they were fully set forth herein.

47.     As a result of the employment relationship which existed between Mr. Ibrahim and Defendants, the expressed and implied promises made in connection with that relationship, and the acts, conduct, and communications resulting in these implied promises, Defendants promised to act in good faith toward and deal fairly with Plaintiff, which requires, among other things, that:

    a.  each party in the relationship must act with good faith toward the other concerning all matters related to the employment;

    b.  each party in the relationship must act with fairness toward the other concerning all matters related to the employment;

    c.  neither party would take any action to unfairly prevent the other from obtaining the benefits of the employment relationship;

    d.  defendant employer would similarly treat employees who are similarly situated;

    e.  defendant employer would comply with its own representations, rules, policies, and procedures in dealing with plaintiff;

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

  f. defendant employer would not terminate plaintiff without a fair and honest cause, regulated by good faith on defendant employer's part;

  g. defendant employer would not terminate plaintiff in an unfair manner; and

  h. defendant employer would give plaintiff's interests as much consideration as it gave its own interests.

  48. Defendants' termination of Plaintiff was wrongful, in bad faith, and unfair, and therefore in violation of Defendants' legal duties. Plaintiff further alleges that Defendants breached the covenant of good faith and fair dealing when the DEA terminated, and the other defendants complied therewith, Plaintiff's employment for pretextual reasons and in a manner that was inconsistent with the DEA's November 18, 2020 assurances and DEA policies and practices, namely the termination of Plaintiff for simply exercising his Constitutional right to assemble.

  49. Defendants' breach of the covenant of good faith and fair dealing was a substantial factor in causing damage and injury to Plaintiff. As a direct and proximate result of Defendants' unlawful conduct alleged in this Complaint, Mr. Ibrahim has suffered and continues to suffer substantial losses including, but not limited to lost past and future income, lost government benefits, and lost career opportunities in an amount to be proven at trial.

  50. As a further direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered extreme anguish, humiliation, and emotional distress, the extent of which is not fully known at this time, but the amount of damages will be proven at trial.

## FOURTH CAUSE OF ACTION

### CONSTITUTIONAL VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS

### (Against All Defendants)

  51. Plaintiff incorporates all allegations of this complaint and re-allege them as though they were fully set forth herein.

  52. The United States Constitution ("Constitution") guarantees certain fundamental rights to individuals- that they will not be deprived of life, liberty, or property without due process of law.

  53. The United States Supreme Court has historically categorized one's employment under the substantive, fundamental right of property.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

54.     Defendants violated Mr. Ibrahim's substantive due process right to his property when the DEA, and other named defendants acting in compliance therewith, terminated Mr. Ibrahim from his government employment with the DEA without good cause and with only pretextual reasons that, as already discussed, had been resolved months prior to this termination.

55.     Defendants actions have resulted in Mr. Ibrahim to permanently be deprived of his employment with the DEA and therefore has suffered a clear violation to his substantive due process right associated with this government employment.

56.     It should be noted that Mr. Ibrahim's FBI Friend who attended the rally was alongside Mr. Ibrahim throughout the entire rally and never suffered any negative repercussions for his attendance. The Federal Bureau of Investigations Director is Christopher Wray, a publicly known affiliate of the Republican Party, in contrast to the Democratically skewed and run DOJ and DEA. That clearly proves that Plaintiff was punished for his political views and for exercising his rights under the constitution.

57.     As a direct, foreseeable, and proximate result of Defendants' violation of Mr. Ibrahim's substantive due process rights, Mr. Ibrahim has suffered and continues to suffer substantial losses including, but not limited to lost past and future income, lost government benefits, and lost career opportunities.

58.     As a further direct and proximate result of Defendants' violation of Mr. Ibrahim's substantive due process rights, the subsequent media leaks and false and defamatory news reports have caused Plaintiff extreme anguish, emotional distress, tension, and anxiety, the extent of which is not fully known at this time, and the amount of damages caused by the Defendants' conduct is not yet fully ascertained, but the value will be proven at time of trial.

## FIFITH CAUSE OF ACTION

### VIOLATION OF THE EQUAL PROTECTION CLAUUSE

### (Against All Defendants)

59.     Plaintiff incorporates all allegations of this complaint and re-allege them as though they were fully set forth herein.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

60.     The Supreme Court of the United States has historically held the Equal Protection Clause of the Fourteenth Amendment in the Constitution is to be reverse incorporated via the Fifth Amendment Due Process Clause so that it also applies to federal entities as well.

61.     Where a state or federal entity discriminates against a protected class with the intent to discriminate triggers the Equal Protection Clause.

62.     Defendants Attorney General Merrick Garland and DEA Administrator Anne Milgram are both in the highest positions possible in relation to the DOJ and DEA, respectively, and are both politically affiliated with the Democratic party.

63.     Mr. Ibrahim, in exercising his Constitutional right to attend the January 6 Republican-affiliated rally, caused his status as a Republican to become known by the DEA. As a result of this newfound knowledge, the DEA, and the other named defendants in compliance therewith, terminated Mr. Ibrahim.

64.     As in the above paragraphs, Mr. Ibrahim was already vetted and communicated to by the DEA regarding his FTA Program results and was provided assurances on November 18, 2020 that he would be enlisted in further programs to craft him into a successful agent. However, between those statements and Mr. Ibrahim's ultimate termination on March 1, nothing material or of substance occurred to warrant the termination of Mr. Ibrahim.

65.     Mr. Ibrahim was on leave from December until January, and upon his return after January 7, Mr. Ibrahim was suddenly called into the office, revoked of his badge and gun, suspended for a total of two months, and then ultimately terminated. The only material event that transpired between the November 18, 2021 assurances and the termination on March 1 was Mr. Ibrahim's attendance of the January 6 rally. However, in the March 1, 2021 termination letter, the only reasons provided for the termination of Mr. Ibrahim were for biweekly reports that ended on September 26, 2020.

66.     It is near-universally known at this point that President Donald Trump polarized the political parties even more than they already were. These extreme feelings of polarization clearly played a substantial role in the ultimate decision by the DEA, a more Democratic controlled federal entity, to ultimately terminate Mr. Ibrahim based on his political affiliation.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

67.     In applying the Equal Protection Clause through the Fifth Amendment, the United States Supreme Court has interpreted fundamental rights more broadly over time as society changes and evolves in an attempt to incorporate newly found derivatives of these fundamental rights, such as the more recent decision to include gender identification as a quasi-suspect classification.

68.     As an example, historically, religion has been qualified as a suspect class and a fundamental right and which discrimination of by a state or federal entity requires the state or federal entity to meet strict scrutiny, the highest level of judicial review, where the government has the burden to show that a compelling government interest is achieved by the scrutinized action and is narrowly tailored to achieve that interest.

69.     Since the inception of the United States and its Constitution, it has been no secret that one's political affiliation is an extremely polarizing factor, substantially similar if not the same to the connotations one's religion may have, and can usually result in one losing out on opportunities due to affiliation with a particular political party. In this case, Mr. Ibrahim lost his government employment with the DEA, his security clearance, and is now a notorious name associated with an unlawful individual due to the false and defamatory media accusations perpetuated by Defendants. It is crucial to note as well, that in the process of perpetuating false news and further negative connotations towards Mr. Ibrahim through the media, he has been continuously referred to by his last name, which historically is one of Muslim roots.

70.     To reiterate once more, Mr. Ibrahim's FBI Friend who attended the rally was alongside Mr. Ibrahim throughout the entire rally and never suffered any negative repercussions for his attendance. The Federal Bureau of Investigations Director Christopher Wray, as already mentioned, is a publicly known affiliate of the Republican Party, in absolute contrast to the Democratically skewed and run DOJ and DEA. That further proves, that Plaintiff was not equally protected under the law because of his political views and/or race and origin.

71.     The discrimination Mr. Ibrahim has suffered due to his Republican party affiliation and/or race and origin is no different than the discrimination one would historically suffer due to a particular religious affiliation, and thus, there is no reason why political affiliation should not be considered at the same fundamental level as one's religious beliefs.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

72.     There is a good faith argument to be made that one's political affiliation, especially when considering the new and never-before seen levels of political polarization that are in existence today, is clearly a category to be placed as a new suspect class, which would require strict scrutiny to overcome.

73.     In this case, Defendants, in pretextually wrongfully terminating Mr. Ibrahim from his DEA position, simply did not want to provide the true reason as to the decision to terminate, one that stemmed from Mr. Ibrahim exhibiting his Constitutional right to assemble for what happened to be a Republican-associated rally in a new societal culture, especially at current times, heavily skewed against those affiliated with the Republican party.

### PRAYER

**WHEREFORE**, Plaintiff MARK IBRAHIM, prays for judgment as follows, as to each and every cause of action alleged herein:

1.  For compensatory damages in an amount to be determined according to proof at trial;

2.  For special damages in an amount to be determined according to proof at trial;

3.  For costs of suit and attorneys' fees as provided by statute 42 U.S.C. §1988;

4.  For costs of suit herein incurred; and

5.  For any such, other and further relief as this court may deem just and proper.


Dated: April 12, 2022                                    **DRE Law, A.P.C.**


                                     By:     __/s/ Boshra Khoder_____
                                          Darren M. Richie, Esq.
                                          Antonio Castillo, III, Esq.
                                          Boshra G. Khoder, Esq.
                                     Attorneys for Plaintiff MARK IBRAHIM



### DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial on all causes of action triable by jury.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**